**UNITED STATES of America, Appellee,**

v.

**John S. McKINNON, Defendant, Appellant.**

**No. 83–1019.**

United States Court of Appeals, First Circuit.

Argued Aug. 2, 1983.

Decided Nov. 17, 1983.

Stephen J. Kiely, Boston, Mass., by appointment of the Court, with whom Cullen & Wall, Boston, Mass., was on brief, for defendant, appellant.

James F.X. Dinneen, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

* Of the District of Puerto Rico, sitting by desig-

LEVIN H. CAMPBELL, Chief Judge.

The appellant, John McKinnon, was convicted after a jury trial in the United States District Court for the District of Massachusetts of engaging in a firearms business without a license, 18 U.S.C. § 922(a)(1), possessing an automatic weapon that was not properly registered, 26 U.S.C. § 5861(d), and transferring an automatic weapon without a proper report, 26 U.S.C. § 5861(e). Wiretaps authorized by a Massachusetts state judge produced evidence that was introduced against McKinnon in federal grand jury proceedings and in the trial below.

McKinnon complains on appeal that the taped conversations used to convict him in this firearms case should have been suppressed as they were obtained pursuant to a wiretap warrant issued to investigate drug offenses only—yet the officers had all along expected to overhear conversations relating to firearms offenses. He further alleges factual defects in certain authorization orders issued by the state judge. And he argues that the investigating officers did not conform to the minimization procedures required by the state court.

McKinnon asks us either to order a new trial at which the jury would not be allowed to hear any evidence concerning the recorded conversations or to reverse his conviction and dismiss the indictments against him.

## I. FACTUAL BACKGROUND

The evidence gathered against McKinnon was obtained during the course of a much larger investigation aimed at stopping the flow of illicit Middle-Eastern narcotics into the Commonwealth of Massachusetts. In October of 1980, state police affiliated with the Norfolk County, Massachusetts, district attorney, and agents from the federal Drug Enforcement Administration, began to investigate Samir Frangie for drug dealing. During the course of this investigation the agents learned that Frangie was also involved in the illicit firearms trade.

nation.

■ The officers then obtained a wiretap warrant from a state court pursuant to Mass.Gen.Laws ch. 272, § 99, in order to learn the extent and particulars of the Frangie drug operation. In the application for the warrant, the officers advised the court that conversations relating to crimes other than drug offenses might be intercepted, including offenses related to the sale of firearms. However, because wiretap authority for firearms investigations was not obtainable, the warrant was sought only to investigate Frangie's drug-related crimes.[1]

The original warrant covered February 11 to February 27, 1981, and the court granted two extensions: on February 26 the warrant was extended to March 14; on March 13 the warrant was extended to March 29. The officers intercepted conversation that included discussion of illegal firearms transactions on February 16, February 26, March 11, and March 22. The latter three conversations were between Frangie and McKinnon. The state court incorporated permission to use gun-related communications in the extensions it granted on February 26 and March 13—the February 26 extension gave permission to use the conversation of February 16. McKinnon argues that the March 13 extension did not give permission to use the February 26 and March 11 conversations. The officers did not seek, nor did the court grant, permission to use the March 22 conversation. The district court, therefore, ordered its suppression at trial.

Between the time the warrant first issued and the last conversation with McKinnon was recorded, the investigating officers properly filed 12 status reports with the state court. These status reports describe significant conversations, including Frangie's conversations with McKinnon, and provided other information which helped the state court satisfy itself that the wiretap was being conducted within appropriate limits. These reports were incorporated by reference in the requests for extension of the warrants.

## II. MCKINNON'S ARGUMENTS

McKinnon argues that the indictment should have been dismissed, and that all the evidence of his conversations with Frangie should have been suppressed, for three reasons.

First, McKinnon points out that the officers who obtained the wiretap knew *ab initio* that they would probably intercept

---

1. While Massachusetts law does not expressly limit the offenses which may be investigated by electronic surveillance, state law governing electronic surveillance cannot be less protective of privacy than the federal electronic surveillance statute, 18 U.S.C. § 2510 *et seq.* Under federal law, electronic surveillance is an approved investigative technique for certain offenses only. *See* 18 U.S.C. § 2516. These offenses do not include violations of the firearms laws. Accordingly a state warrant to investigate such offenses was not available.

Federal law, however, specifically allows use of evidence of non-authorized offenses, often referred to as "other crimes," when obtained during the course of a wiretap investigation of an authorized offense. Section 2517(5) explains how officers may obtain permission to use the evidence of other crimes:

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

Once such authorization is obtained, the evidence of other crimes can be used as specified in subsection three:

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

conversations about illegal firearms transactions. He reads relevant case law and legislative history to require that the interception of communications revealing evidence of crimes other than those specified in the warrant be "unexpected" before the use of those conversations can be authorized pursuant to section 2517(5). Under this proposed interpretation of the statute, the use of the conversations between Frangie and appellant would be prohibited because the investigation had linked Frangie to the illegal gun trade before the wiretap was obtained; thus, the officers could not have been surprised to uncover such conversations.

Second, appellant argues that the court never authorized the use of any conversations between Frangie and appellant, including the conversations of February 26 and March 11. He points to an inconsistency between the second request for renewal, which states that "one" conversation had taken place to date, and the supporting documents which reveal several gun-related conversations. Further, appellant calls attention to the state court's use of the pronoun "a" in the sentence authorizing the use of gun-related communication: if the court had meant to authorize the use of *both* the February 26 and March 11 conversations when it issued its second renewal order, McKinnon argues that the court would not have used an indefinite article. Appellant suggests that the use of the indefinite article coupled with the statement in the request for authorization that "one" call to date involving guns had been intercepted, demonstrate that the court was merely authorizing for a second time the use of the February 16 conversation which did not involve appellant.

Lastly, appellant argues that the officers did not follow the explicit minimization directive of the state court that they listen to the first two minutes of a conversation and, if no incriminating discussion took place, to listen in only for 15 seconds of every minute thereafter to see if the nature of the conversation had changed.

We reject appellant's arguments and affirm his conviction in the district court.

## III. ANALYSIS OF SECTION 2517

■ We do not believe that evidence relating to crimes other than those specified in a wiretap warrant must be discovered "inadvertently" or take officers by "surprise" in order for a court properly to authorize the use of such evidence pursuant to section 2517(5). Congress intended that evidence relating to unauthorized offenses should be given retroactive judicial approval under section 2517(5) if the "original [wiretap warrant] was lawfully obtained, ... was sought in *good faith and not as a subterfuge search,* and that the communication was in fact *incidentally* intercepted during the course of a lawfully executed order." (Emphasis supplied.) S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2189. We see nothing to indicate that the warrant in question, authorizing investigation of drug-related offenses, was a subterfuge designed merely to sanction an investigation of illegal weapons dealings by methods not normally available for such investigations. Samir Frangie was a major actor in the distribution of narcotics in Massachusetts. Agents had purchased drugs from him on several occasions prior to obtaining the wiretap warrant, and he eventually pled guilty to an indictment charging him with violation of federal drug laws. Insofar as appears, the search for evidence of drug offenses was conducted in good faith to obtain further evidence of drug-related crimes.

The legislative history also indicates that the evidence of other crimes should be intercepted "incidentally" during the course of a lawfully executed order. Some courts have suggested that the requirement that the interception be incidental may mean that the interception be "inadvertent" or "unanticipated." *See, e.g., United States v. Brodson,* 528 F.2d 214 (7th Cir.1975); *United States v. Pine,* 473 F.Supp. 349 (D.Md. 1978). While an interception that is unanticipated is *a fortiori* incidental, the con-

verse is not true: something does not have to be unanticipated in order to be incidental. Evidence of crimes other than those authorized in a wiretap warrant are intercepted "incidentally" when they are the by-product of a bona fide investigation of crimes specified in a valid warrant. Congress did not intend that a suspect be insulated from evidence of one of his illegal activities gathered during the course of a bona fide investigation of another of his illegal activities merely because law enforcement agents are aware of his diversified criminal portfolio.[2]

## IV. SUFFICIENCY OF THE AUTHORIZATION

■ We agree with the district court that the officers failed to obtain authorization to use the March 22 conversation. The officers did not ask for permission to use the conversation, and the court took no action that could be construed as granting authorization. We also agree that the reference to the conversation of March 22 before the grand jury does not require dismissal of the indictment. The grand jury would surely have returned the same indictment if only the first two conversations had been presented. The evidence contained in the third conversation was merely cumulative; the proper remedy for lack of authorization in this case is suppression at trial of the evidence not authorized. This is precisely what the district court did.

■ The question whether the officers obtained proper authorization to use the conversations of February 26 and March 11 is a closer one. While we do not condone the carelessness or oversight that led to the inconsistency between the request for authorization to use gun-related communication and the supporting documents incorpo-

rated therein, or the state court's unfortunate use of an indefinite article and the word "one" when more than one conversation had clearly taken place, we do not believe that these lapses, taken in context, are significant enough to undermine authorization to use the conversations.

The key prerequisite for authorization to use the evidence of other crimes not specified in the warrant is a finding by the judge "on subsequent application that the contents [of the communication revealing evidence of other crimes] were otherwise intercepted in accordance with the provisions of this chapter." 18 U.S.C. § 2517(5). On page 4 of the renewal order the judge finds that "the interception of communications have occurred in accordance with the manner authorized by my order." It is significant that this finding appears in the same paragraph in which the judge authorizes the use of "a" gun-related communication. On page 5 of the renewal order the judge states that he has read the status reports and Appendix II; thus, it is reasonable to conclude that he approved of the manner in which the first two gun-related conversations between appellant and Frangie were intercepted. Even though the court used an indefinite article and the phrase "one conversation" in the express authorization to use gun-related communication, the documents taken as a whole reveal an intent to allow the use of all gun-related communication.

Further, as we noted in *United States v. Southard,* 700 F.2d 1, 31 n. 41 (1st Cir.1983), the Second Circuit has determined that section 2517(5) does not require explicit authorization but that authorization can be implicitly obtained when a judge grants a renewal of a wiretap after being advised of

2. We see no danger of abuse inherent in permitting the use of evidence of "other crimes" gathered in these circumstances. Before any "subterfuge search" could be conducted under the guise of a valid search warrant, the officers would have to convince a neutral magistrate that there is probable cause to believe that an offense has been committed for which electronic surveillance is a legislatively approved investigative technique. The sufficiency of that

showing could later be reviewed if the magistrate's judgment were questioned. Further, evidence of other crimes can only be used *after* a magistrate determines on application from the officers that the interception of such evidence occurred during the course of a properly administered wiretap. Thus, the magistrate has a second opportunity to assess the good faith of the investigation of crimes for which the wiretap was originally obtained.

the essential facts of the unspecified violation. *United States v. Masciarelli,* 558 F.2d 1064, 1069 (2d Cir.1977). The District of Columbia Circuit adopted the implicit authorization rule to interpret the local counterpart to section 2517(5), saying that " 'the disclosure in subsequent affidavits to the issuing judge of material facts constituting or clearly relating to other offenses' satisfies the Government's obligation to seek judicial authorization for the disclosure and use of evidence inadvertently intercepted." *United States v. Johnson,* 696 F.2d 115, 125 (D.C.Cir.1982) (*quoting Masciarelli,* 558 F.2d at 1069).

In this case the judge renewed the wiretap after being informed in the status reports of the February 26 and March 11 conversations with appellant. Thus, we find that while the explicit authorization was less than technically perfect, it was sufficiently buttressed with a clear implicit authorization.

## IV. MINIMIZATION

■ Appellant's claim that the officers failed to obey the state court's minimization directive is completely without merit.[3] Within the first minute and a half of the February 26 conversation appellant and Frangie began talking about heroin. This was the very subject—illegal drugs—for which the wiretap had been authorized, and thereafter the officers were entitled to listen to the remainder of the conversation without any time limits, since it was obvious that illegal business was being discussed. Within the first two minutes of the March 11 conversation appellant asks Frangie to get him something from Lebanon. Even though the "something" is not clearly identified until after two minutes as "Azara," a type of hashish, and the conver-

sation about guns takes place after that, the officers could infer that drugs were being discussed, and could properly continue listening, once appellant expressed a desire for Frangie to get him "something" in Lebanon. The officers knew from other information that the Middle East was the source of Frangie's drugs. Thus they had good cause to believe that the conversation had now turned to a subject for which the tap was authorized, and to continue monitoring the call beyond the two-minute limitation.

*Affirmed.*

---

**3.** The relevant part of the order granting the second extension reads as follows:

Officers monitoring the intercepted communications shall use good faith efforts to determine as soon as practicable whether the parties communicating are part of this conspiracy to possess and sell narcotics. Accordingly, communications which at first appear to be unrelated to the possession and sale of narcotic drugs may be intercepted for no

longer than two minutes. Thereafter, they may be spot-monitored for no more than fifteen seconds in any subsequent minute to determine whether they remain unrelated to the designated offense. If during the initial period of two minutes or any subsequent period of fifteen seconds these communications which initially appear unrelated become material to the designated offense, they may then be intercepted thereafter in full.