**UNITED STATES of America, Plaintiff,**

v.

**James Frederick CARLBERG, et al., Defendants.**

**No. G84–39 CR.**

United States District Court, W.D. Michigan, S.D.

Dec. 17, 1984.

Agnes Kempker-Cloyd, Asst. U.S. Atty., Grand Rapids, Mich., for plaintiff.

David A. Dodge, Catchick & Dodge, Grand Rapids, Mich., for James Carlberg.

Larry Willey, Grand Rapids, Mich., for Carleen Gunneson.

Jasper Monti, San Francisco, Cal., for Christine Lark.

J. Tony Serra, San Francisco, Cal., for George Knighton.

Dennis C. Kolenda, Grand Rapids, Mich., for Gregory Reynolds.

Richard Zipser, Southfield, Mich., for Randy Owen.

Dennis C. Kolenda, Grand Rapids, Mich., for Michael Skwarek.

Wade Seys, Grand Rapids, Mich., for Rita Bell.

R. Ben Brown, Grand Rapids, Mich., for Thomas Koryto.

Gary McInerney, Grand Rapids, Mich., for Lawrence Jensen.

Frank Stanley, Grand Rapids, Mich., for Benjamin Stout.

Paul Mitchell, Wyoming, Mich., for Daniel Chapin.

Dennis C. Kolenda, Grand Rapids, Mich., for Thomas Van Blooys.

Joseph Deeb, Grand Rapids, Mich., for Harold Beveridge.

Joseph Jerkins, Kalamazoo, Mich., for Robert Woodley.

Larry Willey, Grand Rapids, Mich., for Anthony Gates.

John Johnson, Grand Rapids, Mich., for Michael Coleman.

Larry Willey, Grand Rapids, Mich., for John VanderWeele.

Charles Rominger, Grand Rapids, Mich., for Frank Hamilton.

Patrick Bowler, Grand Rapids, Mich., for Daniel Parks.

Leon Buer, Grand Rapids, Mich., for Roger Ferringa.

Joel Whetstone, Grand Rapids, Mich., for James Cole.

Michael Knapp, Grand Rapids, Mich., for Thomas Blackburn.

Thomas Milanowski, Grand Rapids, Mich., for Ronald Fradgley.

Leroy Kramer, III, Grand Rapids, Mich., for Thomas Adama.

Dyanna L. Meekhof, Grand Rapids, Mich., for Frank Stedman.

Anthony Valentine, Grand Rapids, Mich., for Anthony Francisco.

## OPINION

BENJAMIN F. GIBSON, District Judge.

All defendants herein have joined in a motion to dismiss various counts of the indictment based on the Government's failure to comply with Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, *et seq.* Title III prohibits interception and disclosure of wire or oral communications, except where specifically authorized under the requirements of that Title. *See* § 2511.

Prior to the indictment of twenty-nine defendants in the instant case, the Government sought and obtained authorization to install a wiretap at the residence of James Carlberg and Carleen Gunneson. The application, submitted to U.S. District Judge Richard A. Enslen, sought authorization to gather evidence of violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, 848. An extensive affidavit by the Special Drug Enforcement Agent set forth facts providing probable cause to believe that those specific crimes were being committed, had been committed, or were about to be committed. Judge Enslen issued the authorizing order on February 22, 1982, and subsequently authorized a thirty-day extension on March 23, 1982. Both the original and the extension order authorized the wiretap based on Judge Enslen's stated finding of probable cause as to the above stated Title 21 offenses.

This dispute arises because the Government used evidence gathered from the wiretap before the grand jury to obtain indictments for offenses other than those specified in the original or extension orders. The defendants contend that such use, without prior judicial approval, violates § 2517(5). The Government does not

contend that it did in fact comply with § 2517(5). Instead the Government asserts that under the facts and circumstances of this case, it was not required to comply. The Court finds that the facts and circumstances of this case do not support the Government's contention. Because the case law requires dismissal of the charges obtained through use of wiretap evidence contrary to § 2517(5), the defendants' motion to dismiss the non-Title 21 counts in the indictment is granted.

Among other things, Title III requires that the applicant include "details as to the particular offense that has been, is being, or is about to be committed." § 2518(b). There is no dispute that this requirement was met in this case with respect to the offenses named in the application, the Title 21 offenses. Here, however, the Government used evidence gathered under that application to indict on other crimes. In this situation, § 2517(5) requires that subsequent judicial approval be sought and obtained prior to the presentation of such evidence to a grand jury for the purpose of indictment on those other crimes.

Section 2517 provides that wiretap evidence may be used for three limited purposes. Such evidence may be used before a grand jury under § 2517(3). Section 2517(5) addresses use of wiretap evidence relating to offenses other than those specified in the order of authorization and provides:

> When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the con-

tents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

■ The purpose of subsequent judicial approval is to prevent evasion of the restrictions placed on original applications, such as a showing of probable cause, enumeration of serious offenses, and a showing of the ineffectiveness of other investigative techniques. *U.S. v. Marion,* 535 F.2d 697 (2d Cir.1976), citing S.Rep. 1097, 90th Cong., 2d Sess., *reprinted in* 2 U.S. Code Cong. & Ad.News, pp. 2112, 2189 (1968). Without a judge's determination of inadvertence, Title III authorizations might degenerate into what Justice Clarke called "the electronic equivalent ... of a general search warrant." *U.S. v. Brodson,* 528 F.2d 214, 215 (7th Cir.1975).

The Government argues that it should be excused from compliance with § 2517(5) based on several theories. First, the Government contends that one of the offenses for which it had authorization is a predicate act for one of the offenses for which it did not have authorization. That is, 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances) is a predicate act for 18 U.S.C. § 1962 (RICO), and there was no need for an independent showing of probable cause for RICO. The *Brodson* Court specifically rejected this very argument. That Court ruled that, despite the relevance of the conversations to the authorized offenses, the propriety of their interception should be tested by submitting them to a judge under § 2517(5). 528 F.2d at 215. Here, as in *Brodson,* the two offenses are separate and distinct crimes, although they involve some common elements. Therefore, under *Brodson,* a separate showing is required under § 2517(5).

The Government also makes this argument with respect to the authorized offense of 21 U.S.C. § 848 (CCE) and RICO. These two offenses clearly seek to proscribe two different types of criminal conduct. *See U.S. v. Sinito,* 723 F.2d 1250, 1261–1 (6th Cir.1983) (RICO encompasses any racket-

eering act set out in 18 U.S.C. § 1961; CCE is directed to leaders or "kingpins" of narcotics organizations); *see also U.S. v. Phillips*, 664 F.2d 971 (5th Cir.1981). The lack of similarity of the elements of these crimes make it impossible for this Court to say that Judge Enslen would have found probable cause to authorize a wiretap for RICO.

The Court is particularly concerned with the serious nature of a RICO offense. This concern causes this Court to reject the Government's invitation to substitute any finding of probable cause for that of Judge Enslen, the authorizing judge. Further, this Court is of the opinion that the serious nature of a RICO violation requires that an authorization application should be express, and clearly inform the judge of what it is he is being asked to authorize.

The cases cited by the Government do not support its position.[1] The Government cites *U.S. v. Lofton*, 518 F.Supp. 839, 843 (S.D.N.Y.1981) for the proposition that there is no need for a separate finding of probable cause to intercept evidence of RICO if prior authorization was obtained for a CCE violation. However, the Court in *Lofton* found that the authorizing judge implicitly approved the gathering of evidence of other crimes, an issue this Court will address below.

In *U.S. v. Smith*, 726 F.2d 852 (1st Cir. 1984) (*en banc*), also relied upon by the Government, authorization was obtained to intercept communications pertaining to a continuing conspiracy to violate state drug laws. The *Smith* court held that no subsequent judicial authorization was required in order to use those conversations to obtain an indictment for a conspiracy to violate 21 U.S.C. § 841. The Court stated, "We reach this conclusion because the state offenses specified in the wiretap authorization contain the *same essential elements*, described in the same language, as the federal offenses for which the indictments were returned." 726 F.2d at 866 (emphasis supplied). As is stated above, the offenses here, CCE and RICO, do not contain the same essential elements.

The Government's second theory is that Judge Enslen implicitly authorized the interception of conversations relating to Title 18 offenses. The Government argues that this theory applies to the RICO counts, and to the counts charging Interstate Travel in Aid of Racketeering, 18 U.S.C. § 1952. Under this theory, if the "other crimes" evidence is set forth in subsequent affidavits (such as progress reports) such that those affidavits "clearly evidence" a non-authorized violation, then there is no need to obtain subsequent judicial approval under § 2517(5). *U.S. v. Masciarelli*, 558 F.2d 1064 (2d Cir.1977). There is a presumption that the authorizing judge had scrutinized the supporting papers, and determined that the statute's requirements had been satisfied. *Masciarelli*, 558 F.2d at 1068, *citing U.S. v. Tortorello*, 480 F.2d 764, 781–83 (2d Cir.1973).

It is undisputed that when the Government applied for the wiretap authorization it was not seeking authorization for RICO or other Title 18 offenses. The Assistant U.S. Attorney concedes this.[2] The same is

---

1. This Court denied a motion by defendant James Carlberg to dismiss counts for which subsequent § 2517(5) approval was not obtained in an opinion issued July 10, 1984. This Court cited *Lofton* and found, based on oral representations by the Government, that Judge Enslen did in fact implicitly approve evidence gathering of other crimes. However, subsequent briefing and this Court's inspection of the progress reports themselves pursuade the Court that Judge Enslen did not implicitly authorize wiretapping of other crimes. *See* Discussion of implicit approval, *infra*.

2. At the December 11, 1984 hearing on this issue, the following colloquy took place:

THE COURT: At what point did you specifically determine that RICO was involved during the course of your investigation in the sense that you were looking at a particular RICO violation? Was there any point in time during this investigation that you determined that from this entire transaction we can make out allegations of RICO?
MRS. KEMPKER–CLOYD: I—
THE COURT: Specifically as opposed to generally.
MRS. KEMPKER–CLOYD: I don't remember. To give you the date, I would say that when there was a RICO and I saw that those elements were met beyond a reasonable doubt

true for the authorization for extension of the wiretap. In fact, the Assistant U.S. Attorney stated that RICO was not considered as a potential charge until some time after the wiretap was removed and at the suggestion of someone from the Drug Task Force. If the Government did not recognize a RICO violation, and was not seeking approval to wiretap for one, can it be argued that Judge Enslen approved the wiretapping for these offenses? On the contrary, this Court is convinced that the RICO and other Title 18 offenses were an afterthought. (The Government concedes this.) Not only must Judge Enslen be aware that the Government was wiretapping for Title 18 violations, he must find that probable cause existed to wiretap for these violations.

Here, when the Government finally decided that RICO offenses occurred, it still did not comply with the statute. The proper course was to seek Court approval at that time. It failed to do so. If the Government takes the position that the reports and other evidence support the Title 18 offenses, it need only to have so advised Judge Enslen, as was done in one instance. The progress report dated April 2, 1982 states that the Government intercepted a communication concerning "a crime not set forth in the court order." [3] The crime referred to by the Government is a "grand larceny." This indicates to the Court that the Government was not unaware of duties under the statute. This further indicates that the Government did not seek subsequent authorization for RICO offenses because it simply was not investigating these offenses. It now seeks retroactive *post hoc* justification and approval for its conduct.[4]

In the instant case, it is assumed that Judge Enslen scrutinized the supporting

---

was when the task force attorney came here and looked it over and pointed it out. I don't know when that was.
THE COURT: That was after the wire-tap activity?
MRS. KEMPKER–CLOYD: Yes.
THE COURT: What I'm asking is more specifically whether or not at the time that you made application for the extension, whether you had zeroed in on the RICO.
MRS. KEMPKER–CLOYD: I did not put it in the—I didn't cite to it at that point, no.
*See* partial transcript of hearing held December 11, 1984, pp. 6–7.

**3.** On page two of this four page progress report, the Government states:

One intercepted communication concerned a crime not set forth in the court order. On March 27, 1982, call identified as # 26 in the logs, takes place between Verne Bell and James Carlberg. In this call they discuss a stolen tow bar and the sandblasting and painting of it. James Carlberg refers to it as grand larceny and costing $500 if you had to buy one. They make plans to store the tow bar in Carlberg's barn so that Carlberg can use it too.

**4.** Judge Kaufman made the following instructive remarks in the course of rejecting the very argument made in the instant case:

The record does not disclose that any application was ever made for such approval in connection with the Delmonico order, or even for its renewal or extension. We cannot agree with our dissenting brother that approv-

al of the Marion-Denero call, intercepted by the Delmonico tap, was provided by the fact that the state court judge was informed of that call when he renewed the separate wiretap for Jimmy's Lounge. It would stretch the rationale of *Tortorello* beyond all meaning to hold that implicit authorization may be furnished in this fashion. In *Tortorello* the orders, "by referring to the affidavits [supporting renewal and amendment of the original order] for a description of offenses and communications to be intercepted, were amended as the contents of the affidavits changed." 480 F.2d at 783. The dissent today seemingly suggests that the Delmonico order was amended by reference to affidavits submitted in support of applications to renew and extend the Lounge order, a conclusion we find logically untenable and not in compliance with Title III. The state court judge was not called upon at any time to pass upon the validity of the interception here challenged. To say that the Delmonico order "became merged into" the Lounge order simply because each was directed generally at similar criminal conduct would extend the logic of *Tortorello* past its breaking point.
*Marion, supra* 535 F.2d at 704 n. 14. In the instant case, no reference to the description of other offenses subsequently charged is made in *any* of the documents supporting the wiretap. Here, as in *Marion*, the Government's claim is that the order of authorization is amended simply by providing the authorizing judge with the contents of phone calls subsequently determined to contain other crime evidence.

papers. However, in this case, he would not have been put on notice that other crimes were being committed. In each of the five-day progress reports, Judge Enslen is informed as to the number of calls intercepted which "related to the object of the intercept order." The Court notes that the intercept order specifically indicates the offenses for which probable cause existed. With the one exception noted above, each progress report then goes on to say, "No intercepted communications concerned crimes other than those set forth in the Court's order." By arguing the implicit approval theory on these facts, it appears the Government now asks the Court to imply that Judge Enslen was aware of facts which he was told did not exist. On this record, the Court cannot imply that Judge Enslen found probable cause to authorize interception of evidence of other crimes.

Finally, the Government contends that two counts charging violations of 18 U.S.C. § 1952 (interstate travel or use of the mails in aid of racketeering) and two counts charging violations of 18 U.S.C. § 894 (collection of credit by extortionate means) should not be dismissed because they occurred prior to the wiretap. The relevant inquiry, though, is whether the evidence of these offenses was derived from the wiretap and thereafter presented to the grand jury. Despite two hearings on this motion, the Government has not presented the Court with any factual basis from which to conclude that this was not the case. Standing alone, the statement by the Government that these crimes occurred before the wiretap was installed is not enough. Therefore, the Court finds that subsequent approval was required with respect to these counts as well.

■ Based on the discussion above and the authority cited, this Court is of the opinion that the Government's failure to obtain judicial approval, and the attendant failure to secure the judicial safeguards required prior to approval of any initial wiretap, is not excused. Title III was passed by Congress in an effort to comply with the constitutional requirements set forth in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (holding that New York's wiretap statute lacked sufficient Fourth Amendment safeguards). Congress intended that these safeguards be adhered to in order to "ensure careful judicial scrutiny throughout." *U.S. v. Marion*, 355 F.2d 697, 698 (2d Cir.1976).

In *Brodson, supra*, the Court cited the "stringent conditions" imposed on the authorization to intercept wire and oral communications, and the provision that all such interceptions are outlawed except where authorized by Title III, as supporting the remedy of dismissal where evidence is disclosed to a grand jury in violation of § 2517(5) to obtain an indictment on offenses other than those for which approval was obtained. 528 F.2d at 216–217 (citing *Gelbard v. U.S.*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). *See also U.S. v. Marion*, 535 F.2d at 704. Therefore, the offenses for which § 2517(5) authorization was not obtained, i.e. all the Title 18 offenses, must be dismissed.

As a result of the dismissal of the Title 18 offenses herein, four defendants have no further charges pending against them. They are: John VanderWeele, Roger Feringa, George Knighton and Robert Woodley. Therefore, these four defendants are dismissed from this case.

As a further result, the convictions against James Carlberg on counts 18 and 54 must be set aside, these counts being subject to the Court's ruling herein.