KerN, Leila R., J.
The Defendant, Carmen DiN-unzio, is charged with violating G.L.c. 265, §25 (extortion), G.L.c. 271, §16(a) (organizing and promoting an illegal gaming operation), and G.L.c. 274, §7 (conspiracy to violate the gaming laws). He now moves to suppress evidence intercepted by means of electronic surveillance on the grounds that (1) the evidence was disclosed to a grand jury in violation of the Federal Wiretap Act, 18 USC §2510 et seq., and (2) that the wiretap warrants targeting conversations relating to G.L.c. 271, §16(a) and G.L.c. 274, §7 (illegal gaming and conspiracy) were sought in bad faith as a subterfuge to gather evidence relating to violations of G.L.c. 265, §25 (extortion). After a hearing on July 11, 2008, and based upon the following findings of fact and rulings of law, the Defendant’s Motion to Suppress must be DENIED.
FINDINGS OF FACT
Based on the evidence in the record, the court makes the following findings of fact. During the course of an ongoing investigation of illegal gaming activities, the Essex County District Attorney’s Office requested a warrant to eavesdrop on the telephone conversations of certain named individuals pursuant to G.L.c. 272, §99. The initial wiretap warrant, as well as every renewal warrant issued thereafter, included the designated offenses (gaming and conspiracy), the targets, their telephone numbers, and a minimization order limiting the interception to those conversations dealing with the offenses designated in the warrant. In addition, each warrant included the following language:
If inculpatory communications relating to “designated offenses” set forth in Chapter 272, Section. 99(B)(7),[1] other than relating to illegal gaming activities are overheard over said telephones, these conversations may be intercepted in full compliance with the mandate of this order and shall be reported to me at the time for the filing of the next Status Report, or sooner, if feasible. I will determine at that time whether a sufficient showing of probable cause has been made to amend this Order to include conversations concerning these other designated offenses.
References to extortion appear in several of the affidavits filed with the original and renewal warrant applications. For example, the following excerpt appears in the Affidavit of Trooper Nunzio Orlando accompanying the original wiretap warrant request on September 13:
One manner of control, regulation, and supervision that has been maintained over the years by organized crime is the extortion of weekly or monthly “rent” payments from bookmakers in return for being allowed to operate without interference. Bookmakers who have been unwilling to make payments of money to traditional organized crime have been threatened with economic harm or physical injury or death, and instances of physical violence to coerce these payments have occurred.
Affidavit of Trooper Nunzio Orlando, 9/11/01, at p. 7.
Other references to extortion, in the specific context of the gaming operations under investigation in this case, appear in Affidavits submitted by Trooper Orlando throughout the month of November 2001. However, no request was made to expand the warrants to include any offense other than running an illegal gaming operation and conspiracy to violate the gaming laws.
One of the wiretap targets was a man named Joseph Settipane. Settipane ran his own illegal gambling op *468 eration that took bets on sporting events and street lotteries. Over the course of the investigation, the police intercepted numerous communications between Settipane and another individual named Anthony Pino. In one of the recorded conversations between Settipane and Pino, Settipane stated he would see “him in the morning over there” to pay him $500. Pino later testified before the grand jury that “him” referred to Carmen DiNunzio, and the $500 was for “administrative costs,” i.e. protection money. Pino testified that he was expected to pay a “hit” of $500 to the Defendant through Settipane. Pino stated that he had no choice but to pay. When Pino was asked if he understood the Defendant to be the “boss” of La Cosa Nostra in Boston, Pino responded that he had heard the rumor, but “[t]hem days, there was guys jockeying for position.”
RULINGS OF LAW
The parties agree that the wiretap warrants obtained in this case are facially valid. They also agree that under G.L.c. 272, §99(P)(l)-(6), suppression of evidence gathered by means of a wiretap is only available in situations where the interceptions were unlawful, the evidence was otherwise illegally obtained, or the warrant was inadequate. The parties also agree that the Commonwealth did not seek explicit judicial authorization prior to introducing evidence relating to extortion to the grand jury. The parties disagree, however, as to whether G.L.c. 272, §99 incorporates a specific provision of the Federal Wiretap Act — 18 USC §2517(5) — relating to the disclosure of evidence of other crimes not listed in the original warrant in judicial proceedings. If this section of the Federal Act is incorporated into the Massachusetts statute, the parties also disagree as to the appropriate remedy for its violation.
This court assumes without deciding that §2517(5) is incorporated into G.L.c. 272, §99. See Commonwealth v. Vitello, 367 Mass. 224, 245-46 (1975) (holding that state legislation authorizing wiretapping and electronic surveillance “may adopt standards more stringent than the requirements of Federal law, thus excluding from state courts evidence which would be admissible in Federal courts, [but] may not adopt standards that are less restrictive . . .”). However, this court finds no violation of §2517(5) in this case. Moreover, even if there had been a violation of §2517(5), this court finds suppression of the evidence is not appropriate absent a finding of bad faith on the part of investigators.
I. Disclosure of “other crimes” evidence did not violate §2517(5)
Section 2517(5) of the Federal Wiretap Act requires law enforcement officers to seek judicial authorization prior to disclosing evidence of crimes not listed in the wiretap warrant before any grand juiy or other judicial proceeding. Section 2515 provides that no evidence intercepted by electronic surveillance can be admitted before a court or grand jury “if the disclosure of that information would be in violation of this chapter.” Since the government made no specific application for judicial authorization, the Defendant argues that the disclosure of evidence of other crimes to the grand juiy violated §2517(5), and that according to §2515 that evidence should not have been admitted. Therefore, DiNunzio concludes that the charge of extortion should be dismissed since the grand juiy’s indictment was based on inadmissible evidence.
Defendant’s position is at odds with federal case law construing §2517(5). In U.S. v. D’Aquila, 719 F.Sup. 98 (D.Conn. 1989), the government procured a warrant to eavesdrop on communications relating to state gambling offenses, but the fruits of the search were later used to support federal indictments for illegal gambling and extortion. The court noted that there was no specific procedure for obtaining judicial authorization to disclose evidence of other crimes under §2517(5). In other words, authorization might be gotten other than by making application specifically under §2517(5). In U.S. v. London, 66 F.3d 1227 (1st Cir. 1995), the defendant argued that extortion-related conversations were wrongfully intercepted and disclosed since the district court’s orders did not specify extortion as a target offense. With respect to the disclosure of the extortion-related conversations, the court held that authorization “can be implicitly obtained when a judge grants a renewal of a wiretap after being advised of the essential facts of the unspecified violation. London, 66 F.3d at 1235 (citing U.S. v. McKinnon, 721 F.2d 19, 23-24 (1st Cir. 1983)). In other words, the government has met its burden of obtaining disclosure authorization when it furnishes to the issuing judge, in subsequent affidavits, ’’material facts constituting or clearly relating to other offenses." London, 66 F.3d at 1235.
The issuing authority, in this case Justice Borenst-ein of the Superior Court, was certainly “made aware of material facts constituting or clearly relating to the other offense.” Four different affidavits submitted by lead investigator Nunzio Orlando in conjunction with four warrant renewal applications made multiple explicit references to extortion or extortion-related terms like “rent” and “protection money.” The government has therefore fulfilled its duty under §2517(5), even if it did not make application specifically under that section. The affidavits filed with its renewal warrant applications contained detailed factual submissions regarding the relationship between illegal gaming and extortion. The issuing^ authority in turn granted the renewal applications after a thorough review of the contents of each application.[2]
Even if the government’s warrant renewal applications, and the affidavits submitted with them, were not sufficient to obtain implicit judicial disclosure authorization under §2517(5), it is settled that suppression is not the usual remedy for such a violation. See *469 D’Aquila, 719 F.Sup. at 112. Given that the purpose of §2517(5) is to “insure that the original wiretap was obtained in good faith and not as a subterfuge,” that purpose is not frustrated, and suppression is not warranted, unless the Defendant demonstrates that the government has acted in bad faith. Id
II. The wiretap warrants to investigate violations of G.L.c. 271, §16(a) and G.L.c. 274, §7 (illegal gaming and conspiracy) were not sought in bad faith.
The Defendant asserts a contradiction between (1) the government’s position that it was not until 2005 that it believed a charge of extortion might lie against him,[3] and (2) its repeated references in its wiretap warrant applications to the use of extortion in connection with illegal gaming. He argues this contradiction demonstrates the investigators’ bad faith, and therefore concludes that the warrants to listen for conversations about gaming were mere subterfuges employed by the government to allow it to build a case against him for extortion.
The Defendant confuses the general knowledge that extortion is an almost universally-used method of enforcing illegal gaming operations, with the finding of probable cause that the Defendant himself was committing extortion. Furthermore, his statement of the law is incorrect. “ ‘Good faith’ turns not on whether the interceptions were ‘inadvertent’ or ‘unanticipated’ but on whether they were ‘incidental.’ ” U.S. v. Levine, 690 F.Sup. 1165, 1171 (E.D.N.Y. 1988). Interceptions are “incidental” when they are “the by-product of a bona fide investigation of crimes specified in a valid warrant” U.S. v. McKinnon, 721 F.2d at 22-23. The government’s investigation of the crimes named in the warrant is “bona fide" when it is not a subterfuge, that is, when it is not an investigation in which the government “has no good faith intention of investigating and prosecuting the specified offenses.” Levine, 690 F.Sup. at 1171. By this standard, the government’s investigation was “bona fide.” It clearly intended, and still intends, to prosecute the defendant for illegal gaming and conspiracy. The other individuals named in the warrant applications have already been prosecuted for those crimes. The interceptions of evidence relating to extortion were therefore “incidental" to the investigátion of illegal gaming and conspiracy.
Thus, even if the disclosure of evidence relating to extortion did somehow violate §2517(5), the law is settled that suppression of the evidence is not an available remedy in this case. Section 2517(5) was designed to protect suspects from illegal interception of their private communications, not punish the government for wrongful disclosure of legally obtained evidence. Only in those instances where the underlying investigation was a mere subterfuge — where the government acted in bad faith — may the evidence be suppressed. Here, the government at all times fully intended to investigate and prosecute DiNunzio for the crimes stated in the wiretap warrants. There was therefore no bad faith.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion to Suppress Wiretap Evidence be DENIED.

The Massachusetts Wiretap statute limits the number of offenses for which a wiretap warrant maybeissuedto certain so-called “designated offenses,” all relating to organized crime.

As a final note regarding §2517(5), this court finds Defendant’s reliance on U.S. v. Marion, 535 F.2d 697 (2d Cir. 1976), to be misplaced. Marion held that some evidence disclosed to a grand jury in violation of §2517(5) should have been suppressed. Marion distinguished between a situation involving the repeated renewal of wiretap warrants where the issuing authority was made aware of facts relating to the other crimes, and a situation in which no renewal application was made. Citing U.S. v. Tortorello, 480 F.2d 764, 782-83 (1973), the court in Marion noted that “the requirement of further validation was satisfied because of the ‘notification’ given the issuing judge ‘in the renewal and amendment application papers.’ ”

See Commonwealth’s Opposition to Defendant’s Motion to Suppress Wiretap Evidence, at 7.